
**FILED**
**AUGUST 29, 2007**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| AG ACCEPTANCE CORPORATION and RABO AGRIFINANCE, INC., § § § Plaintiffs, § § v. § § ROBERT WAYNE VEIGEL, STEVE VEIGEL, TERRA XXI, LTD., VEIGEL CATTLE COMPANY, TERRA PARTNERS, BURNETT & VEIGEL, INC., WILLIAMS & VEIGEL, INC., KIRK & VEIGEL, INC., MASSEY, KIRK, & VEIGEL, INC., § § § § § § § § § § Defendants. § | | NO. 2:06-CV-272-J |

## **OPINION**

The parties tried this case—2:06-CV-272-J—before the Court. They did so back to back with 2:06-CV-153-J, a related case tried before the Court. The parties have stipulated that the Court may consider 2:06-CV-153-J's evidence as being evidence in 2:06-CV-272-J. They have also stipulated that the Court may consider 2:06-CV-272-J's evidence as being evidence in 2:06-CV-153-J.

### I. BACKGROUND FACTS

The real property at issue here comprises 960 acres in Deaf Smith County, Texas. Ag Acceptance Corporation had acquired an undivided 75% interest in the property. Robert Veigel owned an undivided 25% interest.

## A. THE 75% INTEREST

In Terra XXI's bankruptcy, Ag Acceptance Corporation agreed to sell the 75% interest to Terra XXI for a $365,000 promissory note secured by a deed of trust. The bankruptcy court ordered that a special-warranty deed, the promissory note, and the deed of trust have an effective date of October 21, 2002. The deed of trust secured two of Terra XXI's obligations: (1) the obligation under the promissory note and (2) the obligation to Ag Acceptance Corporation under the bankruptcy's confirmed plan and agreed orders. The promissory note provides that default under the confirmed plan or agreed orders constitutes default under the note. It also provides that Terra XXI waives notice of intent to accelerate and notice of acceleration.

Terra XXI defaulted on the obligation under the confirmed plan and agreed orders by June 16, 2003. Ag Acceptance Corporation sent a notice of default and gave Terra XXI thirty days to cure. On July 17, 2003, after default was not cured, Ag Acceptance Corporation sent Terra XXI a notice of acceleration of the obligation owed under the confirmed plan and agreed orders.

On August 7, 2003, Ag Acceptance Corporation executed the special-warranty deed. A week later, Terra XXI executed the deed of trust and the note. All three documents were tendered on August 25, 2003, when Terra XXI acquired legal title to the 75% interest. Eleven days later, Ag Acceptance Corporation informed Terra XXI of a foreclosure sale of the interest in accordance with the deed of trust. Ag Acceptance Corporation bought the interest at the sale for $475,000.

Meanwhile, Terra XXI executed a deed conveying the 75% interest to Terra Partners. Robert Veigel signed the deed on Terra XXI's behalf. The deed purports to have taken effect on August 7, 2003. It was not executed, notarized or recorded till August 15, 2003, ten days before

Terra XXI acquired legal title to the interest. Terra Partners paid $10 and "other good and valuable consideration" for the interest. The special-warranty deed does not define "other good and valuable consideration." Terra Partners has paid the legal bills of Terra XXI, Veigel Farm Partners, Robert Veigel, and Steve Veigel—as well as other obligations owed by Terra XXI or Veigel Farm Partners—since 2000. Robert Veigel testified that, as "other good and valuable consideration," Terra Partners kept paying Terra XXI's legal bills.

Terra Partners was formed in 2000 to farm the property just as Veigel Farm Partners did before going bankrupt. All but one person with an interest in Veigel Farm Partners also has an interest in Terra Partners. Terra Partners has never been liable to Plaintiffs. Terra Partners is comprised of four corporate partners owned by Robert Veigel's family members: (1) Williams & Veigel, Inc.; (2) Burnett & Veigel, Inc.; (3) Kirk & Veigel, Inc.; and (4) Massey, Kirk, & Veigel, Inc. Terra Partners has never filed a tax return.

Robert Veigel owns Williams & Veigel. Steve Veigel, his son, owns Burnett & Veigel. Robert and Steve Veigel are the chief participants in Terra Partners. They have written checks from Terra Partners' bank account and have used Terra Partners' debit card for personal expenses such as meals, lingerie, taxes on a personal residence, camp, a speeding ticket, a television, a trip to Six Flags, a visit to a chiropractor, and a visit to a dentist. Robert Veigel at one point wrote a check from Terra Partners to Amarillo National Bank with the notation for "BV's safe deposit." Between 2004 and 2006, Steve Veigel drafted and cashed many checks made payable to Burnett & Veigel and bearing the notation "advance." Burnett & Veigel has not filed a corporate tax return since 2001. Steve Veigel testified that he has not filed a personal

income tax return for "several years."[1] Robert Veigel has not filed an income tax return for at least four years. Steve and Robert Veigel argue that the purchases by check and debit card were loans to Williams & Veigel and Burnett & Veigel. Defendants do not have an accounting of the personal expenses that were allegedly borrowed.

## B. THE 25% INTEREST

Robert Veigel leased the 25% interest to Terra Partners in 2000. The lease required that Terra Partners pay $10,000 annually for rent. No direct payment for rent was ever made. Defendants contend that Terra Partners paid the rent by paying legal fees, the property's taxes, and administrative expenses. Robert Veigel and Terra Partners have modified the lease twice. Steve Veigel signed for Terra Partners on each occasion. Robert Veigel testified that he made the modifications so that Terra Partners could control the property—thereby maintaining his family's control over the property—if creditors executed on his assets. The first modification extended the lease's term through 2012. The modification was executed on July 18, 2003, a day after Ag Acceptance Corporation accelerated Terra XXI's obligation under the confirmed plan and agreed orders in bankruptcy—an obligation that Robert Veigel guaranteed.[2] The modification was neither notarized nor recorded till January 11, 2005. The second modification extended the lease's term through 2021 and provided that Robert Veigel and his wife, Ella Marie Veigel, could declare a homestead on the property. The modification was executed on October 1, 2006, three days before this Court granted summary judgment against Robert Veigel, Terra XXI and others in 2:05-CV-314-J. It was notarized and recorded on October 10, 2006, seven days after summary judgment.

---

[1] Steve Veigel testified with regard to the advances as follows: "It's not taxable income. That's loans. If the debt is forgiven, there are taxable implications there. If the debt is paid back, there's no tax implications . . . I have no taxable income."

[2] The obligation stems from loans that Ag Services of America made to Veigel Farm Partners and Terra XXI. Robert Veigel guaranteed this debt. A claim for the debt was allowed in the bankruptcies of Veigel Farm Partners and Terra XXI. Robert Veigel ratified his guaranty. One of the Plaintiffs has acquired the debt.

This Court entered judgment in 2:05-CV-314-J on December 12, 2006 for Rabo Agrifinance. The judgment totaled $3,958,577. Rabo Agrifinance got a writ of execution against Robert Veigel's 25% interest. Robert and Ella Marie Veigel moved to stay the writ's enforcement. They argued that a portion of the 25% interest constitutes their homestead. This Court denied the motion. The United States Marshal sold the 25% interest in accordance with the writ of execution. Rabo Agrifinance bought the interest in the property for $200,000 at the execution sale. Robert and Ella Marie Veigel do not reside on this property. Before claiming that part of it constitutes their homestead, they claimed in state court that a different piece of property constitutes their homestead. The state court denied this claim. Robert and Ella Marie Veigel have appealed this denial. Robert Veigel stated that they intend to reside on the property at issue here only if the appellate court affirms the denial of the alleged homestead rights in the other property.

## II. CONTENTIONS OF THE PARTIES

Plaintiffs seek a declaration that Ag Acceptance Corporation validly foreclosed on the 75% interest in the property. Alternatively, they seek a declaration that Terra XXI fraudulently transferred the 75% interest to Terra Partners. They seek a declaration that Robert Veigel fraudulently transferred the 25% interest to Terra Partners by modifying the lease. They seek a declaration that Rabo Agrifinance validly executed on the 25% interest. They seek a declaration that Terra Partners has liability for each defendant's debts because Defendants are a single-business enterprise. They seek to partition the property by sale if the Court holds that either the foreclosure or the execution was invalid. They seek a receivership if the Court declares that they own less than 100% of the property. And they claim that Defendants converted income earned from the property.

Defendants seek a declaration that Ag Acceptance Corporation wrongfully foreclosed on the 75% interest by failing to give proper notice of foreclosure. They seek a declaration that Terra XXI did not fraudulently transfer the 75% interest to Terra Partners. They seek a declaration that Terra Partners validly leases the 25% interest in the property. They seek a declaration that Rabo Agrifinance wrongfully executed on the 25% interest because part of it constitutes Robert and Ella Marie Veigel's homestead. They seek a declaration that they are not a single business enterprise. And they seek to partition the property by kind if the Court sets aside either the foreclosure sale or the execution sale.

### III. FINDINGS OF FACT

1. Any finding of fact that is deemed to be wholly or partly a conclusion of law will be a conclusion of law.

2. The Court incorporates Section I, "Background Facts," into these findings of fact.

#### A. STIPULATED FACTS
(PARAGRAPHS 3 THROUGH 54 COMPRISE THE PARTIES' STIPULATIONS)

3. All of the parties to this action have asserted claims for attorneys' fees. The parties have stipulated that these claims will be submitted to the Court on affidavit after the Court determines who prevails in this action and whether attorneys' fees will be awarded.

4. Plaintiffs Ag Acceptance Corporation and Rabo Agrifinance, Inc. are corporations that hold various financial assets, principally promissory notes secured by farm land, crops and proceeds derived there from, and farming related equipment.

5. Plaintiffs sued Robert Wayne Veigel, Steve Veigel, Terra XXI, Ltd., Veigel Cattle Company, Terra Partners, Burnett & Veigel, Inc., Williams & Veigel, Inc., Kirk & Veigel, Inc., and Massey, Kirk, & Veigel, Inc. on October 6, 2006.

6.  Defendant conducts farming operations on rural property in Deaf Smith County, Texas and Quay and Guadalupe Counties, New Mexico.

7.  The property at issue in this case involves two tracts of land totaling approximately 960 acres located in Deaf Smith County, Texas (collectively, the "Property"). Tract One consists of All of Section 59, Block K-4, Deaf Smith County, Texas. Tract Two consists of The East one-half (E/2) of Section 60, Block K-4, Deaf Smith County, Texas.

8.  Ag Acceptance claims to currently hold title to an undivided 75% interest in the Property.

9.  Ag Acceptance first obtained ownership in an undivided 75% interest in the Property on November 9, 2001 from Dorothy A. Veigel, Jo Ann Veigel Eudy, and Larry Walter (collectively the "Veigel Relatives").

10. Ag Acceptance subsequently agreed on October 20, 2002 to convey its 75% interest to Terra XXI for $365,000 as additional consideration in settlement of an adversary proceeding in Veigel Farm Partners and Terra XXI's bankruptcy case announced to the bankruptcy court on October 21, 2002.

11. As requested by Plaintiffs and ordered by the United States Bankruptcy Court for the North District of Texas, the effective date of all documents (Real Estate Lien Note, Special Warranty Deed with Vendor's lien, and Deed of Trust) related to the transfer of the 75% interest in the property was October 21, 2002.

12. Ag Acceptance executed the Special Warranty Deed with Vendor's Lien (the "Terra XXI Deed") to the 75% Interest on August 7, 2003, but did not tender the documents to Ag Acceptance until August 25, 2003.

13. To effectuate the sale, Robert Veigel, on Terra XXI's behalf, executed a note (the "$365,000 Note") and deed of trust (the "75% Interest Deed of Trust") in favor of Ag

Acceptance on August 14, 2003, but did not tender the documents to Ag Acceptance until August 25, 2003.

14. The Terra XXI Deed defines consideration as the "execution and delivery by [Terra XXI] of that certain Real Estate Lien Note . . . secured by a first and superior vendor's lien and superior title retained in this deed in favor of [Ag Acceptance] and further secured by a first-lien deed of trust of even date . . . ."

15. The Terra XXI Deed was not effective to convey legal title until Terra XXI performed the defined events of consideration, which occurred on August 25, 2003.

16. The Terra XXI Deed retained a vendor's lien in favor of Ag Acceptance to secure repayment of the $365,000 sales price.

17. Terra XXI executed a Special Warranty Deed claiming to convey the 75% undivided interest in the Property to Terra Partners (the "Terra Partners Deed").

18. The Terra Partners Deed states that it was effective August 7, 2003.

19. The Terra Partners Deed was notarized on August 15, 2003, the same day it was executed and recorded in the deed records of Deaf Smith County, Texas.

20. As of June 16, 2003, Terra XXI was in default under the Chapter 11 bankruptcy plan.

21. The Real Estate Lien Note provides that a default under Agreed Orders confirming Terra XXI's Chapter 11 bankruptcy plan constitutes a default under the Real Estate Lien Note.

22. The Real Estate Lien Note contains a Waiver of Notice provision, but the Deed of Trust does not.

23. Terra XXI received notice (dated September 5, 2003) of the foreclosure sale on the 75% interest in the Property.

24. Ag Acceptance foreclosed on the 75% interest on October 7, 2003.

25. Ag Acceptance was the successful bidder on the 75% interest at that sale. The sale price was $475,000.

26. Ag Acceptance claims to have obtained titled to the 75% interest in the property as of October 7, 2003.

27. Ag Acceptance leased its 75% interest to Terra Partners for the 2002 calendar year (the "2002 Lease"). The 2002 Lease was executed on July 15, 2002 and was for a term through December 31, 2002.

28. Terra XXI executed a document entitled "Agreement to Modify Lease" that states that the 2002 Lease was extended until 2012 (the "2002 Lease Modification").

29. The 2002 Lease Modification states that it was executed on July 18, 2003.

30. The 2002 Lease Modification was notarized on October 7, 2003, the date it was recorded in the deed records of Deaf Smith County.

31. October 7, 2003 was the same day as the foreclosure sale by which Ag Acceptance regained ownership of the 75% interest.

32. The 2002 Lease Modification states that it was effective on October 20, 2002, the day before the effective date of any of the documents related to the transfer of the 75% interest in the Property (as ordered by the bankruptcy court).

33. Terra Partners has not tendered any rental payments to Ag Acceptance for years 2003, 2004, 2005, and/or 2006 for the lease of the 75% interest in the Property. Ag Acceptance has not demanded any rental payment and has not given any notice of default nor has Ag Acceptance sought to bring a forcible detainer action against Terra Partners.

34. On December 12, 2006, this Court entered judgment in Cause No. 2:05-CV-314-J against Robert Veigel, Ella Marie Williams Veigel, Terra XXI, and Veigel Cattle in the amount of $3,958,577.97, plus interest and costs of suit.

35. On January 10, 2007, Rabo attempted to partially satisfy the judgment and obtained a Writ of Execution from the District Clerk against Robert Veigel's 25% undivided interest in the Property.

36. Robert and Ella Marie Veigel filed a Motion to Stay Enforcement of Writ of Execution and Request for Expedited Consideration with this Court. Robert and Ella Marie Veigel argued that they possessed homestead rights in Robert Veigel's 25% interest. This Court held a telephonic hearing and denied the motion on February 5, 2007, which permitted the United States Marshal to proceed with the Writ of Execution.

37. On February 6, 2007, the United States Marshal for the Northern District of Texas conducted a sale of Robert Veigel's 25% interest pursuant to the Writ of Execution issued on the judgment by this Court.

38. Rabo claims to have successfully purchased the 25% interest for $200,000.

39. Rabo claims to have obtained title to the 25% interest as of February 6, 2007.

40. Robert and Ella Marie Veigel do not currently reside on the Property.

41. On June 7, 2000, Robert Veigel leased his 25% interest in the property to Terra Partners (the "2000 Lease").

42. Robert Veigel and Terra Partners executed a document entitled "Agreement to Modify Lease" (the "2000 Lease Modification") which claims to extend Terra Partners' 2000 Lease of Robert Veigel's 25% interest in the property through 2012.

43. The 2000 Lease Modification states that it was executed on July 18, 2003.

44. The 2000 Lease Modification was notarized on January 11, 2005, the same day it was recorded in the deed records of Deaf Smith County, Texas.

45. Robert Veigel entered into another modification of the 2000 Lease (the "2006 Lease Modification") that claims to extend the term of the 2000 Lease until 2021, to permit Robert and Ella Marie Veigel to establish a homestead on the Property, to suspend Terra Partners of its obligation to pay $10,000 in rent for the Property until a final accounting of Robert Veigel's legal fees paid by Terra Partners, and to extend the cure period for a breach of the lease from 10 to 180 days.

46. The 2006 Lease Modification states that it was executed on October 1, 2006.

47. The 2006 Lease Modification was notarized and recorded on October 10, 2006.

48. The Court issued a summary judgment opinion on October 4, 2006 in Cause No. 2:05-CV-314-J adjudicating the Terra XXI, Ltd., Veigel Cattle Company, Robert Veigel, Ella Marie Veigel, and Veigel Farms, Inc., liable for debt in the approximate amount of $3,958,577. Judgment was entered on December 12, 2006. Terra Partners has not tendered any rental payments to Rabo for its claimed lease of the 25% interest in the Property. However, any rent payment would not be due to Rabo until December 31, 2007.

49. Terra Partners planted the entire Property with crops in the past (the "Past Crops").

50. Terra Partners entered into an agreement with James Friemel whereby Mr. Friemel would finance some of the expenses required to plant and grow the entire Property with crops for the 2007 crop season (the "Current Crop") in exchange for grazing rights and a security interest in the Current Crop.

51. Terra Partners has obtained 100% of the proceeds of the federal program for the Property to date for crop years 2006 only.

52. Defendants have alleged a claim for conversion in connection with the excess proceeds from the October 7, 2003 foreclosure sale. Defendants abandon this claim.

53. Terra Partners has asserted there is a valid lease on the 75% undivided interest of the 960 acres at issue in this suit. Terra Partners is abandoning this claim.

54. Defendants have alleged a claim for tortious interference with its leasehold rights. Defendants abandon this claim, except for claims asserted in connection with the Friemel contract. The parties agree that these claims will not be tried herein but instead will be asserted in Cause No. CI-07C-024 pending in the state district court in Deaf Smith County, Texas (the "Friemel Suit"). Defendants and Plaintiffs agree that the Friemel related issues will be tried in the Friemel Suit and that neither Plaintiffs nor Defendants have waived any claims related to the Friemel Suit by not trying these claims in this matter. Neither Plaintiffs nor Defendants can raise res judicata as a defense in the Friemel Suit by not trying these claims in this matter.

B. FORECLOSURE ON THE 75% INTEREST

55. Ag Acceptance Corporation validly foreclosed on the 75% interest in the property. It gave the requisite notice and opportunity to cure.

C. FRAUDULENT TRANSFER OF THE 75% INTEREST

56. Terra XXI conveyed the 75% interest in the property to Terra Partners with the actual intent to hinder, delay, and defraud Ag Acceptance Corporation. It was attempting to put the property out of Ag Acceptance Corporation's reach.

57. A deed of trust to the property secured the obligation that Terra XXI owed to Ag Acceptance Corporation under the bankruptcy's agreed orders. It defaulted on the obligation. On July 17, 2003, Ag Acceptance Corporation sent it a notice of acceleration of the obligation. Only a few weeks later, Terra XXI executed a special-warranty deed conveying the 75% interest

to Terra Partners. Robert Veigel, one of two chief participants in Terra Partners, signed the deed on Terra XXI's behalf.

58. The 75% interest in the property was a substantial asset, and Terra XXI did not receive reasonably equivalent value in return. According to the deed of trust, it received only $10 and "other good and valuable consideration." Terra Partners had been paying not only the legal bills of Terra XXI, but also the legal bills of Veigel Farm Partners, Robert Veigel, and Steve Veigel. Assistance with legal bills did not compose any part of this "other good and valuable consideration" for 2003's deed to the property. There was no "other good and valuable consideration."

### D. FRAUDULENT TRANSFERS OF THE 25% INTEREST

59. Robert Veigel twice modified his lease of the 25% interest to Terra Partners: once in 2003, and once in 2006. He made each modification with the actual intent to hinder, delay, and defraud Plaintiffs. He testified that he made both modifications so that Terra Partners could control the property, thereby maintaining his family's control over the property, if creditors executed on his assets.

60. Robert Veigel made 2003's modification the day after Ag Acceptance Corporation accelerated a debt that he guaranteed. Interest was accruing on this debt at 8.5% a year. His 25% interest in the property, one of his few remaining assets, did not secure this debt. But there was a threat that Ag Acceptance Corporation might execute on his assets for his obligation as a guarantor. So he leased the interest to Terra Partners, a partnership in which he is one of two chief participants. His son signed on Terra Partners' behalf. He then concealed the transfer till 2005, when the lease was finally notarized and recorded. He has received modest, indistinct payment in return.

61. Robert Veigel made 2006's modification around the time that the Court granted Rabo Agrifinance summary judgment against him in 2:05-CV-314-J. His son, Steve Veigel, again signed on Terra Partners' behalf. He made the modification to prevent Rabo Agrifinance from executing on the judgment. Even though the modification purports to have been executed three days before the Court granted summary judgment, it was neither notarized nor recorded till seven days after summary judgment. It provided that Robert Veigel and his wife could declare a homestead on the property. This provision set up their contention, made in the motion to stay the execution sale, that they did have a homestead.

E. Homestead and Execution on the 25% Interest

62. Robert and Ella Marie Veigel filed a pleading in 2:05-CV-314-J that designated a part of the 960 acres of real property in Deaf Smith County as their homestead. They do not reside on this property. Before claiming that portion of this property constitutes their homestead, they claimed in state court that a different piece of property constitutes their homestead. The state court denied this claim. Robert and Ella Marie Veigel have appealed this denial. In the case before the Court, Robert Veigel testified that he and his wife intend to reside on a part of the 960 acres in Deaf Smith County "in the event that their previously asserted homestead rights in [the different] property are not judicially allowed after a final appeal." They have not furthered this asserted contingent intent to reside on a portion of the 960 acres in Deaf Smith County with any overt act.

F. Partition

63. The Court finds that the real property cannot be partitioned in kind. Partitioning the property in kind would be unfair and inequitable. It can be fairly and equitably partitioned only by sale.

## IV. CONCLUSIONS OF LAW

1. Any conclusion of law that is deemed to be wholly or partly a finding of fact will be a finding of fact.

2. The Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

3. The Court has personal jurisdiction over the parties.

4. The Court may grant a declaratory judgment in this case under the Federal Declaratory Judgments Act. *See* 28 U.S.C.A. § 2201(a) (2007).

### A. FRAUDULENT TRANSFER

5. The Uniform Fraudulent Transfers Act aims to prevent debtors from transferring property in bad faith before creditors can reach it. *BMG Music v. Martinez*, 74 F.3d 87, 89 (5th Cir. 1996). Selling or leasing property can constitute a fraudulent transfer under the Act. Tex. Bus. & Com. Code Ann. § 24.002(12) (Vernon 2007). A debtor commits a fraudulent transfer by transferring assets with actual intent to hinder, delay, or defraud creditors. *Id.* § 24.005(a)(1). A court may consider at least eleven facts in determining whether the debtor had the requisite intent:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a livener who transferred the assets to an insider of the debtor.

*Id.* § 24.005 (b).

6. Upon proving that a debtor committed a fraudulent transfer, a creditor may avoid the transfer to the extent necessary to satisfy his claim, enjoin further disposition of the asset, have a receiver appointed to take charge of the asset, execute on the asset after obtaining a judgment, and so forth. *Id*. § 24.008.

7. Because Terra XXI conveyed the 75% interest to Terra Partners with actual intent to hinder, delay or defraud creditors, the conveyance constitutes a fraudulent transfer. Because Robert Veigel modified the lease of the 25% interest to Terra Partners in 2003 and 2006 with actual intent to hinder, delay or defraud his creditors, each modification also constitutes a fraudulent transfer.

B. HOMESTEAD AND EXECUTION ON THE 25% INTEREST

8. The Texas Constitution protects a homestead from most creditors. Texas Constitution art. XVI, § 50(a). A homestead may comprise 200 acres of rural property that a landowner has yet to live on. *Clark v. Salinas*, 626 S.W.2d 118, 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.); Tex. Prop. Code Ann. § 41.002(b) (Vernon 2007). A landowner establishes a homestead in such property by (1) presently intending to use it as a home and (2) furthering the intent with an overt act. *Cheswick v. Freeman*, 287 S.W.2d 171, 173 (Tex. 1956); *Clark*, 626 S.W.2d at 120.

9. The intent must come to something more than "a bare, contingent intent." *Cobb v. Collins*, 111 S.W. 760, 761 (Tex. Civ. App. 1908) (citing *Fort v. Powell*, 59 Tex. 321 (Tex. 1883) (holding that property did not constitute a homestead when the landowner intended to make it his home only if he could not sell it; this intent came to only "indeterminate intention to make the property his homestead at some time in the future, provided it suited him to do so")). Merely filing a homestead designation, moreover, does not constitute an overt act in furtherance

of the requisite intent. *See Gilmore v. Dennison* 115 S.W.2d 902, 902 (Tex. Comm'n App. 1938), *cited in Bond v. Owen*, 257 S.W.2d 833, 835 (Tex. Civ. App.—Amarillo 1953, no writ); *see also Connelly v. Johnson*, 259 S.W. 634 (Tex. 1924).

10. No portion of the 960 acres in Deaf Smith County constitutes Robert and Ella Marie Veigel's homestead. They have, at most, only a contingent intent to reside on the property, and they have not furthered this asserted contingent intent with an overt act. Plaintiffs therefore did not wrongfully execute on Robert Veigel's 25% interest in the 960 acres.

### C. Partition

11. Although the law generally prefers a partition in kind over a partition by sale, a partition in kind is proper only when the real property is "susceptible of a fair and equitable division." *Robertson v. Robertson*, 425 S.W.2d 707, 709 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ). A party seeking a partition by sale has the burden to show that a partition in kind is unfair and inequitable. *Robertson*, 435 S.W.2d at 853-54. A partition in kind is unfair and inequitable if the value of a party's divided share will have materially less value than a party's share of the undivided whole. *See Cecola v. Ruley*, 12 S.W.3d 848, 855 (Tex. App.—Texarkana 2000, no pet.).

12. Because partitioning the property in kind would be unfair and inequitable, a partition of the property must be a partition by sale.

### V. CONCLUSION

Accordingly, Plaintiffs are entitled to a judgment declaring five things: (1) Ag Acceptance Corporation validly foreclosed on the 75% interest in the 960 acres in Deaf Smith County; (2) Terra XXI fraudulently transferred the 75% interest to Terra Partners; (3) Robert Veigel fraudulently transferred his 25% interest in the 960 acres when, in 2003 and 2006, he

modified the lease agreement with Terra Partners; (4) Rabo Agrifinance validly executed on the 25% interest because no portion of the 960 acres constitutes Robert and Ella Marie Veigel's homestead; and (5) the 960 acres can be partitioned by sale and not in kind.

IT IS SO ORDERED.

Signed this 29th day of August, 2007.

/s/ Mary Lou Robinson

**MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE**